NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

NOV 15 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> XAVIER BECERRA, Attorney General, in his official capacity as the Attorney General of California and CHARLTON H. BONHAM, in his official capacity as the Director of the California Department of Fish and Wildlife, <br><br> Defendants-Appellees. | No.    16-15255 <br><br> D.C. No. <br> 2:14-cv-01856-JAM-AC <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted September 14, 2017
San Francisco, California

Before:  GOULD and WATFORD, Circuit Judges, and SANDS,** District Judge.

---

        *        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

        **        The Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia, sitting by designation.

Safari Club International challenges California's prohibition on the importation, possession, and transportation of mountain lions in the state of California (the "Mountain Lion Prohibition" or "the Prohibition"). Cal. Fish & Game Code § 4800 *et. seq.* Safari Club asserts two issues on appeal: whether the district court erred by dismissing its dormant Commerce Clause claim, and whether the district court erred by dismissing its 42 U.S.C. § 1983 claim.

1. Safari Club contends that it adequately alleged a plausible claim under the dormant Commerce Clause. We analyze dormant Commerce Clause claims under a two-tiered approach. First, we evaluate whether the law discriminates against or directly regulates interstate commerce. *Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1041, 1044 (9th Cir. 2014). Second, under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), we consider whether the burden imposed on interstate commerce is "clearly excessive in relation to the putative local benefits." *Id.* at 142.

While Safari Club makes a number of allegations related to the effect of the Prohibition on interstate commerce and a small subset of residents in California, it does not allege that the Prohibition discriminates in favor of in-state interests. *See Pac. Nw. Venison Producers v. Smitch,* 20 F.3d 1008, 1012 (9th Cir. 1994). Nor could it make such a challenge. The Prohibition applies equally to in- and out-of-

state mountain lions, as well as in- and out-of-state residents. The district court correctly concluded that the Mountain Lion Prohibition is not discriminatory.

Safari Club contends that the Prohibition substantially burdens interstate commerce because it discourages California residents from traveling to other states and countries to hunt mountain lions, and it prevents persons who have already hunted a mountain lion outside of California from shipping the animal's remains to California. Safari Club alleged that 140 of its members would make plans to transport already harvested animals into California, hunt mountain lions outside of California, or provide services related to mountain lion hunting outside of California if the Prohibition were lifted.

Although there is no absolute numeric test for determining whether a burden on interstate commerce is substantial, the survey responses of 100 or so persons in our view do not provide evidence of a substantial burden on interstate commerce. *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1149 (9th Cir. 2012). Safari Club estimates a burden based on the fact that 3.2% of its members said they were interested in possessing mountain lions in California— extrapolating that about 8,000 Californians would be interested in importing mountain lions hunted outside of California. But Safari Club gives no basis for why this small percentage of a specialty group is representative of all hunters in California, so it does not offer sufficient facts to allege a plausible claim.

Similarly, Safari Club's projection of the revenue that would be generated from these interested persons' ability to possess out-of-state harvested mountain lions did not allege an undue burden because it is extrapolated from Safari Club's unsubstantiated estimate of California hunters' interest. *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 858 (9th Cir. 2002), *opinion amended on denial of reh'g,* 312 F.3d 416 (9th Cir. 2002). The district court did not err in concluding that Safari Club failed to allege a substantial burden on interstate commerce.

Accordingly, the district court did not need to conduct a full *Pike* analysis. *Pharm. Research & Mfrs.*, 768 F.3d at 1044 (noting that under *Pike,* a plaintiff must first show that the statute imposes a substantial burden before the court will determine whether the benefits of the challenged laws are illusory). Only after determining that the state law is discriminatory and there is an undue burden on interstate commerce do we need to undertake a full *Pike* analysis. *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1147 (9th Cir. 2015), *cert. denied,* 136 S. Ct. 2448, 195 L. Ed. 2d 263 (2016); *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1156. The district court did not err in dismissing Safari Club's suit for failure to state a claim.

2. Safari Club contends also that the district court erred by dismissing its Section 1983 claim based on alleged violations of the dormant Commerce Clause. Because the district court did not err in dismissing Safari Club's dormant

4

Commerce Clause claim, the district court also did not err in dismissing its Section 1983 claim. *West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

**AFFIRMED.**